IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JEROME GORDON, # B-51655,

        Plaintiff,

    vs.                           Case No. 17-cv-1302-DRH

WEXFORD HEALTH SOURCES, INC.,
MARY ROGERS,
KIM RICHARDSON,
JOHN/JANE DOE (#1-20 Nurses),
NURSE NANCY,
JOHN DOE (#1-3 Correctional Officers),
JOHN DOE (Lieutenant),
WARDEN JAIMET,
NURSE BROCK,
DR. BUTALID,
NURSE JANA,
JOHN/JANE DOE (#1-6 Doctors),
JOHN/JANE DOE (#1-6 Physician Assts.),
JOHN/JANE DOE (#1-6 Nurse Practitioners),
JOHN/JANE DOE (Counselor),
DERRICK FLATT,
ADMINISTRATIVE REVIEW BOARD,
JOHN BALDWIN,
JOHN DOE (Hospital, Herrin, IL),
and JOHN/JANE DOE (Anesthesiologist),

        Defendants.

## MEMORANDUM AND ORDER

HERNDON, District Judge:

      Plaintiff, currently incarcerated at Lincoln Correctional Center ("Lincoln"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. His claims arose while he was confined at Pinckneyville Correctional Center

("Pinckneyville"). Plaintiff claims that Defendants were deliberately indifferent to a serious medical condition. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's

claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

## The Complaint

On December 12, 2016, Plaintiff injured his leg while in the gym. He went to the Health Care Unit that evening and was given a crutch. (Doc. 1, p. 14). Plaintiff was told that he would be seen by a doctor the next morning.

The next day, however (December 13, 2016), Plaintiff was not on the call list to see a doctor. He asked the John Doe Correctional Officer #1 (R4-B-Wing)[1] to help him get medical attention, because he was in extreme pain. The John Doe Officer #1 asked Nurse Richardson to see Plaintiff, but Richardson refused. (Doc. 1, p. 14).

On December 14, 2016, Plaintiff again informed the John Doe Correctional Officer #2[2] on duty of his need for medical attention. The John Doe Officer #2 told Nurse Richardson again that Plaintiff was injured. Richardson again refused

---

[1] Plaintiff identifies numerous John or Jane Doe parties in the case caption, but does not assign numbers to them in the body of his Complaint. The Court shall thus assign distinct numbers and other identifiers to each unknown party in this factual summary.

[2] Plaintiff's narrative does not indicate whether this John Doe #2 may be the same individual as the John Doe #1 with whom he spoke on December 13, 2016.

to see Plaintiff, telling the John Doe Officer #2 and the R4-Unit John Doe Lieutenant that Plaintiff would not be seen by anyone. (Doc. 1, p. 15).

On December 15, 2016, Plaintiff was seen in the Health Care Unit, where he was diagnosed with a torn tendon in his lower right leg. He was sent to an outside hospital on December 16, 2016, where he was assessed by Dr. Woods (who is not a Defendant), and scheduled for surgery. The tendon-repair surgery was performed on December 23, 2016. (Doc. 1, p. 15).

On January 10, 2017, back at the prison, Nurse Rogers removed Plaintiff's stitches. He questioned her, because he had not yet returned to the specialist (Dr. Woods) for an assessment of the surgery site, but Rogers assured Plaintiff that it was proper for her to remove them. Later that day, Plaintiff showed the incision to another nurse (Helena, who is not a Defendant), who noted that the removal of the stitches had left a "large opening" in Plaintiff's leg. The nurse called an unknown doctor with this information, and the doctor told her to "use her judgment" to address Plaintiff's condition. She put 2 "taped stitches" over the wound, and told Plaintiff that his stitches had been removed too early. (Doc. 1, p. 16).

Plaintiff continued to have serious problems with the surgical site. He suffered with "constant pain" from December 2016 through at least June 2017. On or before March 1, 2017, Plaintiff was prescribed antibiotics (sulfamethoxazole-TMP DS; generic for Bactrim). (Doc. 1, p. 19). On March 13, 2017, he was given a 4th round of this medication, and Dr. Butalid instructed

Plaintiff to return for a follow-up in 10 days. (Doc. 1, p. 18). Butalid ordered a blood test, but this was not done until April 20, 2017. Despite the antibiotics, the wound continued to be painful. *Id.*

Beginning around April 10, 2017, unidentified medical staff started sending Plaintiff call passes to go to the Health Care Unit once a day for dressing changes. (Doc. 1, p. 17). However, many times he would not get a pass, and a nurse would give Plaintiff bandages so he could perform the dressing change himself.

On April 17, 2017, Plaintiff noticed green pus oozing from the wound. He told Nurse Brock, who advised him to write a grievance. Despite this advice, Brock refused to "do anything or talk to anybody else about" Plaintiff's condition. (Doc. 1, p. 17). Plaintiff went for a long period without seeing a doctor. At some point he asked Nurse Nancy for help to address his condition, and she refused. (Doc. 1, p. 18).

On April 20, 2017, Plaintiff had the blood test which Dr. Butalid had ordered over a month before. He then had to wait for another "45 to 90 days" before seeing Dr. Butalid for a follow-up. When he saw the doctor, Plaintiff was given another round of antibiotics, because the wound continued to leak pus, soaking the bandages. (Doc. 1, pp. 18-19).

While taking the prescribed antibiotics, Plaintiff developed skin problems, including an itchy rash, scabbing, and bumps all over his body. This was diagnosed as scabies and treated accordingly. However, it was discovered much later (on May 30, 2017) that Plaintiff was actually having an allergic reaction to

the antibiotics. (Doc. 1, pp. 19-20). Furthermore, Dr. Butalid diagnosed Plaintiff with high blood pressure that he stated was caused by the lengthy course of antibiotics. Dr. Butalid put Plaintiff on Lisinopril to control his blood pressure. (Doc. 1, p. 20).

On June 2, 2017, Plaintiff was given Bactrim again. (Doc. 1, p. 22). He claims that this should not have been done, because of the allergic reaction that he had to this medication. He claims that "medical staff" failed to keep accurate medical records on his condition, and failed to follow the recommendations of his specialist/surgeon (Dr. Woods). *Id.*

On June 15, 2017, Dr. Bob (who is not named as a Defendant), ordered a week-long course of medication for Plaintiff, to help reverse the allergic reaction. (Doc. 1, pp. 20-21). However, Nurse Jana failed to give Plaintiff this medication for the week. She created a false record stating that Plaintiff got the medication, when he in fact did not receive it. Plaintiff told Dr. Bob about the problem, but he just told Plaintiff to "tell somebody higher up." (Doc. 1, p. 21).

Plaintiff claims generally that all the John/Jane Doe Nurses (#1-20), John/Jane Doe Doctors (#1-6), John/Jane Doe Physician Assistants (#1-6), and John/Jane Doe Nurse Practitioners (#1-6), saw him throughout the 6 months he was treated following his surgery. (Doc. 1, p. 9).

In the end, Plaintiff had to undergo a second surgery on the same leg (he does not disclose the date of this surgery). Dr. Woods told Plaintiff that taking the antibiotics for 6 months and the ensuing allergic reaction caused "major damage"

to Plaintiff's lower right leg. (Doc. 1, p. 21). Dr. Woods performed the second surgery at the John Doe Hospital in Herrin, Illinois. (Doc. 1, p. 22). The John/Jane Doe Anesthesiologist failed to do his/her job properly, because Plaintiff regained consciousness during the surgery, when he "felt digging sensations and sharp pains" and started talking. *Id.* The John/Jane Doe Anesthesiologist "went into a panic" and put Plaintiff back under. *Id.*

Plaintiff further complains that Pinckneyville officials do not properly handle inmate grievances. (Doc. 1, pp. 22-25). The counselor does not consistently make grievance forms available, causing a delay in the process. The counselor, grievance officer, and Warden Jaimet deny grievances over medical care, which causes delay and more suffering. Plaintiff claims that he put these officials on notice of his need for medical care, but each denied his grievances. The Administrative Review Board and IDOC Director Baldwin failed to set up a medical committee to hear medical grievances, and they also denied Plaintiff's grievances.

Finally, Plaintiff complains that Wexford Health Sources, Inc. ("Wexford"), which employs the health professionals at Pinckneyville, has been sued numerous times over such problems as providing inadequate care to inmates and violating IDOC rules. (Doc. 1, p. 25). They improperly deny grievances. They have "cost induced policies" and fail to follow specialist recommendations. (Doc. 1, pp. 25-26). He claims that Wexford failed to send him to a specialist in a timely manner. Wexford fails to follow up, fails to hire competent employees, and fails to help

inmates with their medical needs. He asserts that Wexford, as well as the other Defendants, were deliberately indifferent to his medical needs.

Plaintiff also invokes the Court's supplemental jurisdiction over state law claims arising from these facts. (Doc. 1, p. 6).

Plaintiff seeks compensatory and punitive damages. (Doc. 1, p. 27).

## **Merits Review Pursuant to 28 U.S.C. § 1915A**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Eighth Amendment deliberate indifference claim against John Doe Correctional Officers #1 and #2, and John Doe Lieutenant, for failing to obtain medical treatment for Plaintiff on December 13-14, 2016;

> **Count 2:** Eighth Amendment deliberate indifference claim against Nurse Richardson, for refusing to give Plaintiff medical attention on December 13-14, 2016;

> **Count 3:** Eighth Amendment deliberate indifference claim against Nurse Rogers, for removing Plaintiff's stitches prematurely on January 10, 2017;

> **Count 4:** State law malpractice/negligence claim against Nurse Rogers, for removing Plaintiff's stitches prematurely on January 10, 2017;

> **Count 5:** Eighth Amendment deliberate indifference claim against

Dr. Butalid, for failing to monitor Plaintiff's condition in a timely manner and continuing to treat Plaintiff with ineffective medications that worsened his condition;

**Count 6:** State law malpractice/negligence claim against Dr. Butalid, for failing to monitor Plaintiff's condition, failing to properly diagnose his allergic reaction to the antibiotics, and allowing Plaintiff to be treated with Bactrim on/after June 2, 2017, after the May 30, 2017, discovery that Plaintiff was allergic to Bactrim;

**Count 7:** Eighth Amendment deliberate indifference claim against Nurses Brock and Nancy, for failing to treat or refer Plaintiff when the medications were not improving his infected wound;

**Count 8:** Eighth Amendment deliberate indifference claim against Nurse Jana for failing to give Plaintiff his medication for a week in June 2017;

**Count 9:** Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc., for failing to send Plaintiff to a specialist in a timely manner, and for failing to provide adequate medical care for his condition;

**Count 10:** State law malpractice/negligence claim against the John Doe Hospital in Herrin, Illinois, and the John/Jane Doe Anesthesiologist for that hospital, who failed to prevent Plaintiff from regaining consciousness in the middle of his second leg surgery, in June 2017 or soon thereafter;

**Count 11:** Eighth Amendment deliberate indifference claim against Warden Jaimet, John/Jane Doe Counselor, Flatt (Grievance Officer), Administrative Review Board, and Baldwin, for hindering Plaintiff's access to the grievance procedure, failing to properly handle his grievances, and denying his grievances over medical care.

Counts 2, 3, 5, 7 and 8 shall proceed for further review in this action.

However, Counts 1, 4, 6, 9, 10, and 11 shall be dismissed for failure to state a claim upon which relief may be granted.

### Deliberate Indifference to a Serious Medical Condition

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. An objectively serious condition includes an ailment that significantly affects an individual's daily activities or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). However, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Plaintiff's serious tendon injury satisfies the objective component of an Eighth Amendment claim. The remaining question is whether the various

Defendants acted or failed to act with deliberate indifference to a known risk of serious harm.

### Dismissal of Count 1 – John Doe Correctional Officers & Lieutenant

On December 13 and 14, 2016, Plaintiff asked the John Doe Correctional Officers #1 and #2 for help in obtaining medical attention for his painfully injured leg. According to Plaintiff, each officer promptly conveyed his request to Nurse Richardson. However, Richardson refused to see Plaintiff.

Neither of the Correctional Officers was a medical provider, thus it appears that all they could do for Plaintiff was to alert a nurse or other medical staff to his need for treatment. They did not refuse to help Plaintiff, but instead took the reasonable step of informing the nurse that Plaintiff needed her help. Their attempts to assist Plaintiff were the opposite of deliberate indifference. They cannot be held accountable for Richardson's decision not to attend to Plaintiff's needs. These facts do not support a deliberate indifference claim against the John Doe Correctional Officers #1 or #2, thus **Count 1** shall be dismissed as to these individuals.

Plaintiff also fails to state a claim against the John Doe Lieutenant. According to Plaintiff, his only involvement in these events was that he happened to be present on December 14, 2016, when Richardson declared that she would not help Plaintiff, and he would not be seen by any medical provider that day. Plaintiff never says that he told the John Doe Lieutenant anything about his condition, or that he requested this individual to do anything to assist him.

Nothing in the Complaint suggests that the John Doe Lieutenant acted or failed to act with disregard to a risk of harm to Plaintiff's health. **Count 1** shall therefore be dismissed in its entirety for failure to state a claim upon which relief may be granted.

## Count 2 – Deliberate Indifference – Richardson

In contrast, Nurse Richardson knowingly refused to examine Plaintiff's injury or give him any medical treatment, even though she was informed of his injury and was requested to help him for 2 days in a row, immediately following his accident. Richardson's decision to ignore Plaintiff's requests for care may have contributed to the delay (from December 12 to December 15, 2016) that ensued before he was summoned to see a provider at the Health Care Unit. Plaintiff experienced pain and difficulty moving about during that time, and when he was finally seen, it became clear that he had a serious injury that required prompt surgical repair.

Based on these facts, Plaintiff's deliberate indifference claim against Richardson in **Count 2** shall proceed for further review.

## Count 3 – Deliberate Indifference – Rogers

Nurse Rogers saw Plaintiff after his surgery, and undertook the removal of Plaintiff's stitches apparently without consulting his surgeon, or sending him for the follow-up consultation that Plaintiff was supposed to have with the specialist. Soon thereafter, without the stitches to hold it closed, Plaintiff's wound opened back up and eventually became badly infected.

Rogers' action could indicate deliberate indifference on her part to the risk of complications for Plaintiff, if, for example, she was aware that the stitches were not ready to come out, or that he should have seen the specialist first. On the other hand, her decision to remove the stitches on January 10, 2017, may have amounted merely to malpractice or negligence (which is not deliberate indifference). Further factual development will be necessary in order to determine whether Rogers violated Plaintiff's constitutional rights. The deliberate indifference claim in **Count 3** shall therefore proceed.

## Dismissal of Count 4 – Malpractice/Negligence – Rogers

The same facts regarding Rogers premature removal of Plaintiff's stitches would also support a claim under Illinois law for negligence or malpractice. However, Plaintiff has not fulfilled the legal requirements to proceed with this state law claim at this time.

Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)). While this Court has supplemental jurisdiction over these state-law claims pursuant to 28 U.S.C. § 1367, this is not the end of the matter.

Under Illinois law, a Plaintiff "[i]n any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice," must file an affidavit along with the complaint, declaring one of the following: 1) that the affiant has consulted and reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that the claim is reasonable and meritorious (and the written report must be attached to the affidavit); 2) that the affiant was unable to obtain such a consultation before the expiration of the statute of limitations, and affiant has not previously voluntarily dismissed an action based on the same claim (and in this case, the required written report shall be filed within 90 days after the filing of the complaint); or 3) that the plaintiff has made a request for records but the respondent has not complied within 60 days of receipt of the request (and in this case the written report shall be filed within 90 days of receipt of the records). *See* 735 ILL. COMP. STAT. §5/2-622(a) (West 2013).[3] A separate affidavit and report shall be filed as to each defendant. *See* 735 ILL. COMP. STAT. §5/2-622(b).

Failure to file the required certificate is grounds for dismissal of the claim. *See* 735 ILL. COMP. STAT. § 5/2-622(g); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th

_____

[3] The August 25, 2005, amendments to a prior version of this statute were held to be unconstitutional in 2010. *Lebron v. Gottlieb Mem. Hosp.*, 930 N.E.2d 895 (Ill. 2010) (Holding P.A. 94-677 to be unconstitutional in its entirety). After *Lebron*, the previous version of the statute continued in effect. *See Hahn v. Walsh*, 686 F. Supp. 2d 829, 832 n.1 (C.D. Ill. 2010). The Illinois legislature re-enacted and amended 735 ILL. COMP. STAT. §5/2-622 effective January 18, 2013 (P.A. 97-1145), to remove any question as to the validity of this section. *See* notes on Validity of 735 ILL. COMP. STAT. §5/2-622 (West 2013).

Cir. 2000). However, whether such dismissal should be with or without prejudice is up to the sound discretion of the court. *Sherrod*, 223 F.3d at 614. "Illinois courts have held that when a plaintiff fails to attach a certificate and report, then 'a sound exercise of discretion mandates that [the plaintiff] be at least afforded an opportunity to amend her complaint to comply with section 2-622 before her action is dismissed with prejudice.'" *Id.*; *see also Chapman v. Chandra*, Case No. 06-cv-651-MJR, 2007 WL 1655799, at *4-5 (S.D. Ill. June 5, 2007).

In the instant case, Plaintiff has failed to file the necessary affidavit or report to support his claim against Nurse Rogers. (The same is true for the malpractice/negligence claims against the other Defendants herein.) Therefore, the malpractice claim against Rogers in **Count 4** shall be dismissed. However, the dismissal shall be without prejudice at this time, and Plaintiff shall be allowed 35 days to file the required affidavit, if he desires to seek reinstatement of this claim. The certificate of merit must also be filed, in accordance with the applicable section of §5/2-622(a). Should Plaintiff fail to timely file the required affidavit/certificate, the dismissal of **Count 4** may become a dismissal **with prejudice.** *See* FED. R. CIV. P. 41(b).

### Count 5 – Deliberate Indifference – Dr. Butalid

Dr. Butalid prescribed the antibiotics for Plaintiff that failed to effectively treat his infection, and which caused Plaintiff to have the severe allergic reaction. Plaintiff's surgeon told Plaintiff that his reaction to the antibiotics damaged his leg. Dr. Butalid told Plaintiff that the lengthy course of antibiotics caused him to

develop high blood pressure.

The fact that Plaintiff suffered these serious side effects does not, by itself, prove that Dr. Butalid was deliberately indifferent to Plaintiff's condition. However, the alleged delay(s) in Dr. Butalid's re-evaluation of Plaintiff's wound and his infrequent monitoring of Plaintiff's persistent symptoms could support a deliberate indifference claim. Similarly, if it was Dr. Butalid who prescribed the 5 (or more) rounds of the same antibiotic (which failed to overcome Plaintiff's symptoms of infection), could amount to deliberate indifference. The mere fact that a prescribed treatment has proven ineffective does not rise to the level of deliberate indifference. *Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008). However, the Seventh Circuit has found that an Eighth Amendment claim may be stated where a prison doctor persists in a course of treatment known to be ineffective, fails to order further testing or refuses to refer the inmate to a specialist. *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (doctor continued ineffective treatment, and refused to order endoscopy or specialist referral over a two-year period during which plaintiff suffered from ulcer).

Plaintiff was, of course, referred to a specialist soon after his initial injury in December 2016, and underwent his first surgery. However, he makes general statements indicating that unidentified medical providers may have delayed or failed to make a referral back to the specialist as months went by during which the surgical incision festered and failed to heal. Plaintiff also claims, without going into specifics, that his medical providers failed to follow his surgeon's

recommendations. It is not clear from the Complaint whether Dr. Butalid or other medical provider(s) were responsible for any delay in sending Plaintiff back to see his surgeon/specialist, nor does Plaintiff specify which Defendant(s) failed to follow the surgeon's orders. Any of those omissions could support a deliberate indifference claim. *See Perez v. Fenoglio*, 792 F.3d 768, 777-79 (7th Cir. 2015) (prison doctor's refusal to follow treatment recommendations of outside medical specialist may constitute deliberate indifference). However, Plaintiff must provide more specific information in order for those claims to be evaluated.

Nonetheless, based on Plaintiff's allegations that Dr. Butalid was responsible for delays in Plaintiff's treatment which prolonged his suffering, and that Dr. Butalid persisted in treating him with medications that were ineffective, the deliberate indifference claim in **Count 5** shall proceed for further review.

### Dismissal of Count 6 – Malpractice/Negligence – Dr. Butalid

Several of Plaintiff's factual allegations involving Dr. Butalid could support a medical malpractice/negligence claim, including the alleged neglect of Plaintiff's care, misdiagnosis of his allergic drug reaction as scabies, and the ongoing use of antibiotics which led to serious side effects. However, the same requirements of Illinois law outlined under Count 4 apply to the malpractice/negligence claim against Dr. Butalid, and Plaintiff has not provided the required affidavit regarding his attempts to consult with a qualified health professional in order to secure a report/certificate of merit supporting his claim. For this reason, the malpractice/negligence claim against Dr. Butalid in **Count 6** shall also be

dismissed without prejudice, for failure to state a claim upon which relief may be granted.

As with Count 4, Plaintiff shall be allowed 35 days to file the required affidavit to support his claim against Dr. Butalid, if he desires to seek reinstatement of Count 4.

### Count 7 – Deliberate Indifference – Nurses Brock and Nancy

Plaintiff alleges that while he was suffering from a serious infection in his leg in April 2017, Nurse Brock advised him to write a grievance, but refused to further assist him. He also claims that Nurse Nancy refused to help him obtain adequate treatment. These allegations are not very specific, but these nurses' refusal to treat Plaintiff or take steps to secure treatment for him could support a deliberate indifference claim. At this early stage, the claims against Brock and Nancy in **Count 7** may proceed for further development.

### Count 8 – Deliberate Indifference – Nurse Jana

Plaintiff claims that for a week beginning on June 15, 2017, Nurse Jana failed to give him the medication that was intended to alleviate the allergic reaction he had to the antibiotics. He further states that she falsified records to show that Plaintiff received the medication when in fact she withheld it from him. These allegations support a deliberate indifference claim, [4] and Plaintiff may therefore proceed with his claim against Jana in **Count 8**.

---

[4] It is also possible that Plaintiff may be able to bring a negligence/malpractice claim against Nurse Jana based on these facts. However, such a claim would be subject to dismissal for Plaintiff's failure to provide the affidavit and certificate of merit required under Illinois law. If Plaintiff is able to provide his affidavit and a certificate of merit to support a state law claim against Nurse Jana, he may seek leave to amend his complaint to add this state law claim.

**Dismissal of Count 9 – Deliberate Indifference – Wexford**

Defendant Wexford Health Sources, Inc., ("Wexford") is a corporation that employs the medical providers at Pinckneyville and provides medical care at the prison, but it cannot be held liable solely on that basis. A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action).

Plaintiff makes many allegations against Wexford, accusing the company of operating under a cost-cutting policy, providing inadequate care, and violating IDOC rules, among other practices. However, most of these claims are general statements regarding how Wexford allegedly operates the system of medical care, without any direct connection to acts or omissions of the individual Defendants who managed Plaintiff's treatment. Plaintiff's only specific claim as to how Wexford's alleged policies affected his care, is that Wexford allegedly failed to send him to a specialist in a timely manner. (Doc. 1, p. 26). However, Plaintiff does not articulate when that failure occurred, or which individual provider(s) refused or delayed the specialist referral because of a Wexford policy. The allegations in the Complaint simply do not connect a Wexford policy to any alleged violation of Plaintiff's constitutional rights. Accordingly, the deliberate indifference claim in **Count 9** shall be dismissed without prejudice at this time for failure to state a

claim upon which relief may be granted.

**Dismissal of Count 10 – Malpractice/Negligence – Hospital & Anesthesiologist**

Plaintiff claims that the John/Jane Doe Anesthesiologist who assisted with his second leg operation at the John Doe Hospital in Herrin, Illinois, did not properly administer Plaintiff's anesthetic. The fact that Plaintiff woke up during the surgery and felt pain and pressure suggests that negligence or malpractice may have occurred. However, as discussed above in Count 4, Plaintiff must comply with the affidavit/certificate of merit requirements of Illinois law before he may maintain this claim.

**Count 10** against the John Doe Hospital and its John/Jane Doe Anesthesiologist shall be dismissed without prejudice. Again, Plaintiff shall be allowed 35 days to file his affidavit(s) regarding his efforts to consult with a qualified health professional on the merits of his claim against these Defendants. He must then file the certificates of merit within the applicable time limits set forth in 735 ILL. COMP. STAT. §5/2-622(a), if he wishes to seek reinstatement of Count 9.

**Dismissal of Count 11 – Grievance Officials**

Plaintiff seeks to hold the John/Jane Doe Counselor, Flatt (Grievance Officer), Warden Jaimet, the Administrative Review Board, and Baldwin (IDOC Director) liable for the deficiencies in his medical care, based on their mishandling or denial of the 2 grievances he filed to complain about the medical providers. (Doc. 1, pp. 4, 22-25). Plaintiff states that one grievance was denied,

and the second one "disappeared." (Doc. 1, p. 4).

The Seventh Circuit instructs, however, that the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Plaintiff does not allege that the officials named above had any personal involvement in providing his day-to-day medical care, or in the alleged delays or misconduct in handling his medical condition. In order to be held individually liable, "a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). The Complaint does not suggest that the John/Jane Doe Counselor, Flatt, Jaimet, the Administrative Review Board, or Baldwin was personally responsible for the alleged deliberate indifference to Plaintiff's medical needs. Furthermore, an administrator may not be held liable for the misconduct of his or her subordinate employees. The doctrine of *respondeat superior* (supervisory liability) is not applicable to § 1983 actions. *Sanville*, 266 F.3d at 740.

Finally, the alleged flaws in the grievance procedure at Pinckneyville will not support an independent constitutional claim. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process

Clause." *Antonelli*, 81 F.3d at 1430. The Constitution requires no procedure at all, and the failure of state prison officials to follow their own grievance procedures does not, of itself, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982).

For these reasons, **Count 11** against the John/Jane Doe Counselor, Flatt, Jaimet, the Administrative Review Board, and Baldwin shall be dismissed for failure to state a claim upon which relief may be granted.

### Dismissal of Remaining Defendants

Plaintiff includes a number of additional Defendants in his list of parties (Doc. 1, pp. 6-13), but fails to include any allegations against them in the body of the Complaint. These parties are: John Doe Correctional Officer #3, John/Jane Doe Nurses (#1-20), John/Jane Doe Doctors (#1-6), John/Jane Doe Physician Assistants (#1-6), and John/Jane Doe Nurse Practitioners (#1-6). Plaintiff mentions only 2 encounters with John Doe Correctional Officers, which are addressed under Count 1; he does not describe any incident with the third John Doe Correctional Officer (#3). With reference to the various unknown medical providers, Plaintiff states generally that they treated him over a period of 6 months (Doc. 1, pp. 8-9), but he does not include any facts to suggest that any of these individuals denied or delayed his medical care, or otherwise displayed deliberate indifference to his condition.

Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a)(2).  Where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him.  Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual.  *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).  Accordingly, the John Doe Correctional Officer #3, John/Jane Doe Nurses (#1-20), John/Jane Doe Doctors (#1-6), John/Jane Doe Physician Assistants (#1-6), and John/Jane Doe Nurse Practitioners (#1-6) will be dismissed from this action without prejudice.

### Pending Motions

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

The motion for service of process at government expense (Doc. 4) shall be **GRANTED IN PART AND DENIED IN PART.**  Service shall be ordered below on those Defendants who remain in the action.  No service shall be made on the dismissed Defendants.

### Disposition

**COUNTS 1, 4, 6, 9, 10, and 11** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

Defendants **WEXFORD HEALTH SOURCES, INC., JOHN/JANE DOE NURSES (#1-20), JOHN DOE CORRECTIONAL OFFICERS (#1-3), JOHN DOE LIEUTENANT, JAIMET, JOHN/JANE DOE DOCTORS (#1-6), JOHN/JANE DOE PHYSICIAN ASSISTANTS (#1-6), JOHN/JANE DOE NURSE PRACTITIONERS (#1-6), JOHN/JANE DOE COUNSELOR, FLATT, ADMINISTRATIVE REVIEW BOARD, BALDWIN, JOHN DOE HOSPITAL (Herrin, IL),** and **JOHN/JANE DOE ANESTHESIOLOGIST (Hospital in Herrin, IL)** are **DISMISSED** from this action without prejudice.

**IT IS FURTHER ORDERED** that if Plaintiff wishes to move the Court to reinstate the medical malpractice/negligence claims in **COUNT 4** against **ROGERS**, **COUNT 6** against **BUTALID**, and/or **COUNT 10** against **JOHN DOE HOSPITAL (Herrin, IL)**, and **JOHN/JANE DOE ANESTHESIOLOGIST (Hospital in Herrin, IL)**, Plaintiff shall file the required affidavit(s) pursuant to 735 ILL. COMP. STAT. §5/2-622, within 35 days of the date of this order (on or before February 27, 2018). Further, Plaintiff shall timely file the required written report(s)/certificate(s) of merit from a qualified health professional, in compliance with §5/2-622. Should Plaintiff fail to timely file the required affidavits or reports, the dismissal of **COUNTS 4, 6, and/or 10** may become a dismissal **with prejudice**.

As to the remaining claims in **COUNTS 2, 3, 5, 7, and 8,** the Clerk of Court shall prepare for Defendants **RICHARDSON, ROGERS, BUTALID, BROCK, NANCY,** and **JANA**: (1) Form 5 (Notice of a Lawsuit and Request to

Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to the United States

Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Judge Herndon
2018.01.23
16:44:50 -06'00'

**United States District Judge**