IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JEROME GORDON,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY KNOPE, BROCK SHIRLEY,<br>ALBERTO BUTALID, and<br>JANA RUETER,[1]<br><br>    Defendants. | Case No. 17-cv-1302-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

  This matter is before the Court on a motion for summary judgment (Docs. 81, 82) filed by Defendants Brock Shirley, Alberto Butalid, Nancy Knope, and Jana Rueter. Plaintiff Jerome Gordon had until June 17, 2019, to file a response, but he failed to do so. The Court considers the failure to respond an admission of the facts of Defendants' motion. SDIL Local Rule 7.1(c). *See also Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003); *Flynn v. Sandahl*, 58 F.3d 283, 288 (7th Cir. 1995) (a failure to respond constitutes an admission that there are no undisputed material facts).

## BACKGROUND

  On December 4, 2017, Gordon, who at the time he filed his Complaint was an inmate of the Illinois Department of Corrections ("IDOC") but has since been released, filed his Complaint alleging deliberate indifference in the treatment of his ankle (Docs. 1

---

[1] Nurse Brock has identified herself by her proper name, Brock Shirley. The Clerk is DIRECTED to CORRECT the docket to reflect Nurse Brock's proper name.

and 8). The claims which remain in this case include:

> Count 5: Eighth Amendment deliberate indifference claim against Dr. Butalid for failing to monitor Plaintiff's condition in a timely manner and continuing to treat Plaintiff with ineffective medications that worsened his condition;
>
> Count 7: Eighth Amendment deliberate indifference claim against Shirley and Knope for failing to treat or refer Plaintiff when the medications were not improving his infected wound; and
>
> Count 8: Eighth Amendment deliberate indifference claim against Rueter for failing to give Plaintiff his medication for a week in June 2017.

(Docs. 8 and 66).

During the relevant time period, Gordon was housed at Pinckneyville Correctional Center ("Pinckneyville"). He had an Achilles tendon rupture which required surgery. On December 26, 2016, Gordon had surgery on his right Achilles tendon by Dr. C.D. Wood. On April 17, 2017, he saw Shirley for a dressing change (Doc. 82-1, p. 2). He informed Shirley that he was in pain and had not been seen by a physical therapist (*Id.*). Shirley observed serosanguineous drainage from the wound but did not see any signs of infection. She contacted the physical therapist to inform him that Gordon needed to be seen and put him on the MD line for an evaluation of his wound (*Id.*).

On April 20, 2017, Gordon saw Dr. Butalid for his wound. This was the first encounter Dr. Butalid had with Gordon because he did not become the medical director at Pinckneyville until April 2017 (Doc. 82-2, p. 1). Dr. Butalid noted scaring with hyperpigmentation around the wound and a ½ cm opening at the wound (Doc. 81-1, p. 3; 82-2, p. 2). He squeezed the opening and noted yellow puss like bloody discharge but

noted no signs of redness or swelling in the leg (*Id*.). He diagnosed Gordon with post-operation sight infection but tested the area to rule out an abscess or fistula (*Id*.). He ordered that the dressing be changed daily, and that Gordon be treated with Bactrim for an infection. Gordon also was prescribed hydrocortisone cream for the itching. Dr. Butalid noted that if the wound did not improve, he would refer Gordon back to the surgeon for further review (*Id*.).

On May 18, 2017, Dr. Butalid followed up with Gordon for complaints of increased swelling and yellow discharge (Doc. 81-1, p. 12; 82-2, p. 2). The surgical sight had granulation pink tissue, and the opening was draining yellow pus (*Id*.). Gordon's entire right leg was also swelling and tender with hyperpigmentation (*Id*.). Dr. Butalid prescribed Motrin 400 for the pain and a different antibiotic, Augmentin. He also ordered x-rays and referred Gordon to the surgeon on an urgent basis (Doc. 82-1, pp. 12-16; 82-2, pp. 2-3). On May 19, 2017, the referral was approved (Doc. 82-1, p. 17).

On May 23, 2017, Gordon was seen at the Orthopedic Institute by Dr. Wood (Doc. 82-1, p. 21, 82-2, p. 3). Dr. Wood also noted the presence of a foreign material, a suture polyester material (Doc. 82-3, p. 12). He recommended that Gordon's Augmentin be continued and scheduled a follow-up (Doc. 81-1, p. 21, 82-2, p. 3; 82-3, p. 12). He also suggested that Gordon be placed in a boot, have regular wound cleanings and triple antibiotic application to the wound (Doc. 82-3, p. 12). Dr. Butalid approved the recommendations (Doc. 82-2, p. 3; 82-1, p. 32).

On May 30, 2017, Gordon returned to Dr. Wood for a follow-up (Doc. 82-1, p. 35; 82-3, p. 13). Dr. Wood recommended that Gordon be scheduled for surgery to remove the foreign object. He also requested that Gordon continue with his antibiotics (Doc. 82-1,

p. 36). On June 1, 2017, Dr. Wood's office contacted the healthcare unit and requested that Gordon be switched to Bactrim based on his lab results (Doc. 82-1, p. 42). Gordon's medication was switched to Bactrim per Dr. Wood's directive (*Id*. at pp. 42). At the time, Dr. Butalid had no knowledge that Gordon was allergic to Bactrim (Doc. 82-2, p. 3).

On June 3, 2017, Gordon was seen by Nurse Practitioner Blum. He complained of a rash since starting Bactrim. Blum discontinued the Bactrim and ordered that he be prescribed Augmentin (Doc. 82-1, p. 46). On June 12, 2017, he was again seen by Blum who noted a rash on his chest (*Id*. at p. 53). Blum noted that Gordon was now having an allergic reaction to Augmentin and prescribed him Benadryl and prednisone. A penicillin allergy was added to his chart (*Id*.). He was also prescribed Keflex for the infection (*Id*.). Jana Rueter issued Gordon prednisone from June 13-15, 2017. She also issued him Benadryl on June 13, 2017 (*Id*. at pp. 38-39; 82-4, p. 2). On June 16, 2017, Gordon had a follow-up with Blum who noted that he no longer had a rash (Doc. 82-1, p. 56).

On June 23, 2017, Gordon had surgery to remove the foreign object from his wound (Doc. 82-3, p. 22). At a follow-up with Dr. Woods on July 17, 2017, Gordon did not note any further complaints (*Id*. at p. 35).

LEGAL STANDARDS

A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014), citing FED. R. CIV. P. 56(a). *Accord Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of

material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enter., Inc.*, 753 F.3d 676, 681-82 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542 (7th Cir. 2014).

## B. Deliberate Indifference

Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, 414 F.3d 645, 652–53 (7th Cir. 2005) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted)). *Accord Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) ("[D]eliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution."). A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

To prevail, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (*citing Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)). The

first prong that must be satisfied is whether the prisoner has shown he has an objectively serious medical need. *Arnett*, 658 F.3d at 750. *Accord Greeno*, 414 F.3d at 653. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a substantial risk of serious harm.") (internal quotation marks omitted) (emphasis added).

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Greeno*, 414 F.3d at 653. A plaintiff need not show the individual literally ignored his complaint, just that the individual was aware of the serious medical condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008).

## ANALYSIS

### A. Brock Shirley

Gordon's Complaint alleges that Shirley failed to treat or refer him to the doctor. The medical records, however, show the exact opposite. The records show that when Gordon met with Shirley on April 17, 2017 and complained of pain and informed her that he had not yet seen a physical therapy, she examined his wound and placed him on the MD line. She also contacted the physical therapist about meeting with Gordon. As a result of Shirley's actions, Gordon saw Dr. Butalid three days later. There is no evidence that she acted with deliberate indifference to Gordon's complaints; instead, she provided him with care and scheduled a visit with Dr. Butalid to address his concerns. Because there is

no evidence that Shirley failed to treat or refer Gordon, the Court **GRANTS** summary judgment in favor of Shirley.

## B. Dr. Butalid

There is also no evidence in the record to suggest that Dr. Butalid acted with deliberate indifference. Although the Complaint alleges that Dr. Butalid failed to timely monitor Gordon's condition and continued with ineffective medication, the medical records show that Dr. Butalid treated Gordon on a number of occasions. When Gordon first presented to Dr. Butalid, he diagnosed him with a sight infection, conducted tests to rule out other possible causes for the infection, and prescribed him with antibiotics and other medications. He also followed up with Gordon and prescribed a different antibiotic when Gordon displayed additional swelling and discharge from the wound. At that appointment, he also put Gordon in for an urgent referral to Dr. Wood who Gordon saw five days later. There is no evidence that Dr. Butalid delayed treatment of Gordon's infection. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) ("A significant delay in effective medical treatment may…[constitute] deliberate indifference….where the result is prolonged and unnecessary pain.").

There likewise is no evidence that Dr. Butalid continued with an ineffective course of treatment. *See Greeno*, 414 F.3d at 655 (finding deliberate indifference where medical defendants persisted in a course of conservative treatment for eighteen months despite no improvement). *See also Kelley v. McGinnis*, 899 F.2d 612, 616 (7th Cir. 1990) (deliberate indifference when doctor continues with treatment knowing it to be ineffective). Instead, the record demonstrates that Dr. Butalid changed Gordon's antibiotic to Augmentin when Bactrim did not resolve the infection and caused further swelling. In addition,

Dr. Butalid referred Gordon back to the specialist, Dr. Woods, who agreed with the continued treatment of the infection with Augmentin. Gordon was then switched back to Bactrim at the request of Dr. Woods. Although it was ultimately determined that he was allergic to Bactrim, there is no evidence in the record to suggest that Dr. Butalid was aware of this allergy or continued with Bactrim despite Gordon's allergy. When it was determined that Gordon was allergic to Bactrim, he was switched to two different antibiotics and provided with medications to combat his allergic reaction. There is no evidence in the record to suggest that Dr. Butalid acted with deliberate indifference in treating Gordon's infection. Accordingly, summary judgment is **GRANTED** for Dr. Butalid.

### C. Jana Rueter

Rueter is also entitled to summary judgment because there is no evidence of deliberate indifference on her part. Although Gordon alleges that Rueter failed to provide him with medication, the medical records show that Rueter provided Gordon with his prescribed prednisone on June 13, 14, and 15, 2017. She also provided him with his last dose of Benadryl on June 13, 2017. Gordon received the other two doses of Benadryl from another nurse on June 12, 2017. Gordon has offered no evidence to refute the medical records. Accordingly, the Court **GRANTS** summary judgment for Jana Rueter.

### D. Nancy Knope

The Court also finds that Knope is entitled to summary judgment. Knope testified that she did not treat Gordon for his infection, nor did she see him during the relevant time period (Doc. 86). The medical records also demonstrate that Knope did not treat Gordon. She is not identified anywhere in the records. Because there is no evidence that

Knope actually treated Gordon for his infection, the Court also **GRANTS** summary judgment as to Knope.

## Conclusion

For the reasons stated above, the Court **GRANTS** Defendants' motion for summary judgment (Docs. 81 and 82). The Clerk is **DIRECTED** to close the case and enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: February 26, 2020

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**